IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICKY VERRELL BAUGHMAN,

    Petitioner,               No. CIV S-09-2687 GGH P

    vs.

MATTHEW CATE,

    Respondent.             ORDER

_____/

I. Introduction

    Petitioner is a former state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case is before the undersigned pursuant to both parties consent. Docs. 4, 8. Petitioner challenges his 2005 conviction for incest, oral copulation of a person under the age of 16 and ten counts of lewd and lascivious conduct. The trial court sentenced petitioner to nine years and eight months. This action is proceeding on the original petition filed September 28, 2009, raising the following claims: 1) sufficiency of the evidence; 2) application of the Sandoval[1] harmless error analysis on aggravating circumstances violated due process; 3) double jeopardy violation; 4) Ex Post Facto violation.

---

[1] People v. Sandoval, 41 Cal. 4th 825, 839 (2007).

1

After carefully considering the record, the court orders that the petition be denied.

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the

objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of settled law to unique situations will not qualify as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

\\\\\

\\\\\

III. <u>Background</u>

The opinion of the California Court of Appeal contains a factual summary that the court adopts below.

> The victim, F., was born in November 1989. She and her two brothers lived in a trailer with [petitioner], their father. F. testified that "a little while after Christmas"-approximately "three or four months" after her 14th birthday-[petitioner] placed his hand on her breast, under her shirt and bra, while she was lying in bed. He left his hand there for a "long time."
>
> Later that same day, while the family was at [petitioner's] mother's house, [petitioner] apologized to F. and said it would "never happen again." Within five minutes, however, [petitioner] closed the bathroom door, had F. remove her panties, and licked F.'s vagina as she sat on the toilet. After a minute or two, [petitioner] removed his pants and had sexual intercourse with F. Afterward, he again told her he was sorry and it would never happen again.
>
> [Petitioner], however, continued to have sex with F. just about every week. Nearly every time, [petitioner] would apologize and promise it would never happen again. The incidents occurred when F.'s brothers were gone or asleep. Sometimes [petitioner] gave her brothers money to go to the store and would then have sex with F. while they were gone. [Petitioner] would tell the brothers to slow down if they returned too quickly. On one occasion, F.'s brothers awoke while [petitioner] was having sex with F. and saw [petitioner] "going up and down." When F.'s brothers told [petitioner] they thought he and F. were having sex, [petitioner] got upset, raised his voice, and said he and F. had just been playing around.
>
> On November 11, 2004, a couple of weeks after the final incident, F. told an adult friend that [petitioner] was having sex with her and she could no longer stay with him. F. was interviewed by police. Being scared and nervous, she failed to mention that defendant had also had sex with her on that first occasion when he licked her vagina.
>
> [Petitioner] was interviewed by police on November 17, 2004. In that interview, he denied any sexual contact with F. On November 19, 2004, however, during a consultation with Billy Lee Wilson, Jr., a marriage and family therapist intern at Shasta Treatment Associates, [petitioner] admitted he had a sexual relationship with F. [Petitioner] told Wilson that he had sexual intercourse with F. between four to six times, "[o]ne to two years before" the date of the consultation. Also, on December 1, 2004, in another interview with police, [petitioner] admitted he had sexual intercourse with F. several times.
>
> At trial, [petitioner] testified he did not remember having sex with F., although he did not deny it. [Petitioner] did not remember speaking with Wilson and said he admitted having sex with F. to the police because the police made him fear F. would commit suicide or turn to drugs or prostitution if he said she was lying. [Petitioner] said he had problems with his memory due to a head injury he sustained a few years earlier.

Lodged Document (Lod. Doc.) 6 at 2-4.

IV. Procedural History

On direct appeal, the Court of Appeal held that petitioner had forfeited his claim regarding the imposition of upper term consecutive sentences by the trial court using factors not found by the jury (Cunningham violation).[2] The California Supreme Court reversed and remanded, holding that the right to a jury trial on aggravating circumstances may not be forfeited absent an express waiver by petitioner. On remand the Court of Appeal finding no express waiver, addressed the claim on the merits. The Court of Appeal on remand held that while petitioner's rights were violated by the trial court's imposition of an upper term sentence, the error was harmless beyond a reasonable doubt.

> Such an error is harmless if we can conclude "beyond a reasonable doubt, that [a] jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury." (People v. Sandoval (2007) 41 Cal.4th 825, 839, 62 Cal.Rptr.3d 588, 161 P.3d 1146.) We find that to be the case here. One of the aggravating factors cited by the trial court in imposing the upper term was that "[petitioner] took advantage of a position of trust or confidence to commit the offense." We have no doubt the jury unquestionably would have found this factor to be true. [Petitioner] was the single parent of his victim daughter. When he initially fondled his daughter, he promised not to do it again, but then within five minutes, orally copulated her and had sexual intercourse with her. Again, he said he was sorry and that it would never happen again. [Petitioner], however, continued to have sexual intercourse with his daughter almost every week, and during most of these instances apologized and (erroneously) said it would not happen again. He made sure his sons (the victim's brothers) were either out of the house or asleep when he had sexual intercourse with his daughter and during the one incident that he was caught by his sons, he denied committing the acts. On this record, a jury would have unquestionably found that [petitioner] took advantage of a position of trust or confidence to commit the incest and oral copulation.

Lod. Doc. 11 at 12-13.

V. Argument & Analysis

Claim 1 - Insufficient Evidence

Petitioner alleges that there was insufficient evidence to support the guilty

---

[2] Cunningham v. California, 542 U.S. 296, 124 S.Ct. 2531 (2004).

5

findings that he committed lewd acts in December 2003, January 2004 and February 2004.

<u>Legal Standard</u>

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979). <u>Jackson</u> established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. <u>U.S. v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). First, the court considers the evidence at trial in the light most favorable to the prosecution. <u>Id</u>., citing <u>Jackson</u>, 443 U.S. at 319, 99 S.Ct. 2781. "'[W]hen faced with a record of historical facts that supports conflicting inferences," a reviewing court 'must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>Id</u>., quoting <u>Jackson</u>, 443 U.S. at 326, 99 S.Ct. 2781.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" <u>Id</u>., quoting <u>Jackson</u>, 443 U.S. at 319, 99 S.Ct. 2781. "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." <u>Id</u>.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the <u>Jackson</u> standard in the absence of an unreasonable determination. <u>Juan H. v. Allen</u>, 408 F.3d 1262 (9th Cir. 2005).

1  Discussion

2  This claim was brought on direct appeal and denied in a reasoned opinion by the
3  Court of Appeal.

4  [Petitioner] contends that there was no substantial evidence to support his
   convictions of lewd and lascivious conduct that occurred in December 2003
5  (count 3) January 2004 (count 4), and February 2004 (count 5).  We disagree.

6  When a defendant challenges the sufficiency of the evidence, the reviewing court
   "must determine, in light of the whole record whether any rational trier of fact
7  could have found the essential elements of the crime beyond a reasonable doubt.
   [Citation.]" (People v. Davis (1995) 10 Cal.4th 463, 510, italics omitted.)  To be
8  sufficient, evidence presented at trial need only "'reasonably justify the trier of
   fact's findings'" when viewed light in the light most favorable to the judgment
9  and presuming in support of the judgment every fact reasonably deducible from
   the evidence.  (People v. Stanley (1995) 10 Cal. 4th 764, 792-793; see People v.
10 Ochoa (1993) 6 Cal. 4 th 1199, 1206).  In other words, "[i]f the verdict is
   supported by substantial evidence, we are bound to give due deference to the trier
11 of fact and not retry the case ourselves. [Citations.]. . . It is the exclusive function
   of the trier of fact to assess the credibility of witnesses and draw reasonable
12 inferences from the evidence. [Citations.]" (People v. Sanchez (2003) 113 Cal.
   App. 4th 325, 330.)

13
   [Petitioner's] argument that the evidence was insufficient is based on the
14 following testimony of F.:

15 "Q:    [A]nd do you know what it is that you're testifying about?
   "A:    Yes.
16 "Q:    And what's that?
   "A:    Because me and my dad, uhmm, we had sex.
17 "Q:    Okay.  How long ago was it that that first happened?
   "A:    It was a little while after Christmas, I think.
18 "Q:    Do you remember what year it was?
   "A:    It was '04.
19 "Q:    Okay.  So it was – how old were you?
   "A:    I was 14.
20 "Q:    How long had you been 14?
   "A:    Like three or four months.
21 "Q:    Okay.  So, then it was – and your birthday is in November; is that correct?
   "A     Yeah.
22 "Q:    So it was a couple of months after than when you first remember this
                 happening?
23 "A:    Yes."

24 Relying heavily on F.'s estimate that it was "[l]ike three or *four* months" (italics
   added) after her birthday, [petitioner] argues that this testimony fails to support a
25 finding by the jury that the first incident happened any earlier than March 2004 –
   four months after F.'s birthday.

26

7

> To the contrary, we conclude F.'s testimony was sufficient to place the first incident at least as early as January 2004. January 2004 was "a little while after Christmas" in "'03" and only a couple of months (two and one-half) after F.'s birthday. And while F.'s testimony arguably may not have been sufficient to place the first incident earlier than that, the jury had more than F.'s testimony from which to find that the first incident took place in December 2003.
>
> Billy Lee Wilson, Jr., the marriage and family therapist intern at Shasta Treatment Associates, testified that [petitioner] admitted he had a sexual relationship with F. Between four to six times, "[o]ne to two years before" the November 19, 2004, consultation. When asked for further clarification, Wilson explained that [petitioner] said that sexual intercourse occurred over the previous year to two years. Thus, there was sufficient evidence of lewd and lascivious conduct in December 2003, January 2004, and February 2004, to support the jury's verdict.

Lod. Doc. 6 at 4-7.

Petitioner was charged and found guilty of ten counts of lewd and lascivious conduct. The ten counts were for conduct occurring each month from December 2003 to September 2004. Reporter's Transcript (RT) at 283-84. As set forth in the state court opinion, evidence of these acts occurring in this time frame was set forth by the victim and the therapist. The victim testified that the sexual abuse continued regularly, either weekly or monthly, until approximately October or November of 2004. RT at 177, 182.

Petitioner disputes that there was sufficient testimony to find him guilty of all ten counts of lewd and lascivious conduct. While it is difficult to follow all of petitioner's arguments, it appears that he believes that the therapist's testimony of four to six acts does not support all ten counts. While this is true, petitioner does not take into account the testimony of the victim that the abuse continued for nearly a year.

Petitioner also argues that the victim's testimony that the first sexual abuse happened three to four months after her November birthday, cannot support a guilty finding on the lewd and lascivious counts for December 2003, January 2004 and February 2004. Essentially petitioner rests his argument on the victim's inconsistent testimony that the abuse began either a

\\\\\

\\\\\

little while after Christmas or three to four months.[3]  However, as set forth in the Court of Appeal opinion, petitioner's own statements to the therapist indicated that the abuse began prior to December 2003.  Juries often wrestle with inconsistent facts.  It was reasonable for the jury to find that the conduct occurred in December 2003 when looking at the therapist's testimony and the victim's testimony.

Petitioner has failed to demonstrate that no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt or that the state court holding was an unreasonable determination of this issue.  This claim is denied.

Claim 2 - Sandoval Analysis Violated Due Process

Petitioner next argues that the Court of Appeal's use of the Sandoval harmless error analysis violated due process as petitioner was not given an opportunity to be heard or address the issue.

Legal Standard

In Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546 (2006), the trial court enhanced a defendant's sentence based on a fact never placed before the jury, yet the Supreme Court applied harmless error analysis.  In Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827 (1999), the jury was told it need not decide a particular issue, and the Supreme Court reviewed the error for harmlessness.  In short, under clearly established Supreme Court authority, "[f]ailure to submit a sentencing factor to the jury ... is not structural error."  Recuenco, 438 U.S. at 222.

The use of the Sandoval harmless error analysis to address a Cunningham violation has repeatedly been mandated as the proper procedure by the Ninth Circuit.  See Butler v. Curry, 528 F.3d 624, 652, n. 20 (9th Cir. 2008); see also Chioino v. Kernan, 581 F. 3d 1182, 1185-86 (9th Cir. 2009).  Moreover, habeas relief is appropriate only if a sentencing error "had a substantial and injurious effect" on petitioner's sentence.  Brecht v. Abrahamson, 507 U.S. 619,

---

[3] The victim also definitively stated that the abuse occurred in "04."

9

637, 113 S.Ct. 1710 (1993). Under the Ninth Circuit standard,

> [a court] must grant relief if [it is] in "grave doubt" as to whether the jury would have found the relevant aggravating factors beyond a reasonable doubt. Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."

Butler, 528 F.3d at 648 (citations omitted). Under California law, "only one aggravating factor is necessary to set the upper term as the maximum sentence, ... if at least one of the aggravating factors on which the judge relied in sentencing [the petitioner] was established in a manner consistent with the Sixth Amendment, [the petitioner's] sentence does not violate the Constitution." Id., 528 F.3d at 643.

Discussion

As discussed above the Court of Appeal found that

> One of the aggravating factors cited by the trial court in imposing the upper term was that "[petitioner] took advantage of a position of trust or confidence to commit the offense." We have no doubt the jury unquestionably would have found this factor to be true. [Petitioner] was the single parent of his victim daughter. When he initially fondled his daughter, he promised not to do it again, but then within five minutes, orally copulated her and had sexual intercourse with her. Again, he said he was sorry and that it would never happen again. [Petitioner], however, continued to have sexual intercourse with his daughter almost every week, and during most of these instances apologized and (erroneously) said it would not happen again. He made sure his sons (the victim's brothers) were either out of the house or asleep when he had sexual intercourse with his daughter and during the one incident that he was caught by his sons, he denied committing the acts. On this record, a jury would have unquestionably found that [petitioner] took advantage of a position of trust or confidence to commit the incest and oral copulation.

Lod. Doc. 11 at 13.

Petitioner has failed to demonstrate the Sandoval harmless error analysis is contrary to established Supreme Court authority. Petitioner has also failed to raise any 'grave doubts' as to whether the jury would have found the aggravating factor to be true. The court agrees with the Court of Appeal that as the jury found petitioner guilty on multiple counts and based on the facts of the instant case, it is abundantly clear that petitioner took advantage of a position of trust or confidence to commit these crimes, which a jury would have found. See also

Heron v. Clay, 612 F. Supp.2d 1133, 1142-43 (C.D. Cal. 2009).

For all these reasons, this claim is denied.

Claims 3 & 4: Double Jeopardy and Ex Post Facto

Claims three and four in the petition were summarily denied by the California Supreme Court and no state court provided a reasoned opinion.[4]

If a state court denies constitutional claims without an explicated decision, a federal court reviewing a habeas corpus application pursuant to § 2254(a) "ha[s] no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context." Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.'" Luna v. Cambra, 306 F.3d 954, 960 (9th Cir.2002). Thus, pursuant to Delgado, the Court must conduct an independent review of the record to determine whether the state court's decision was objectively unreasonable. In Delgado, the Ninth Circuit held that, "Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." 223 F.3d at 982; see also Luna, 306 F.3d at 954 (quoting Fisher v. Roe, 263 F.3d 906, 915 (9th Cir. 2001) (internal citation omitted) ("We reverse only if 'a careful review of the record and the applicable case law leaves us with the "firm conviction" that the state court was wrong.'")).

Discussion

These claims appear to be premised on the notion that this court will vacate

---

[4] These claims were raised to the Court of Appeal after the Supreme Court remanded the case, but were summarily denied by the Court of Appeal in the remand opinion. Lod. Doc. 11 at 13, fn. 2.

petitioner's sentence based on his Sandoval claim and then remand the case to the trial court for a jury trial on the aggravating factors and for the trial court to issue a new sentence.

Petitioner argues that if that were to occur, no new trial could be held on the aggravating factors, as it would be a violation of double jeopardy and any new sentence would need to be pursuant to the sentencing guidelines in place at the original trial, not the new guidelines, which would be an Ex Post Facto violation. As the court is not granting any aspect of this petition, these claims need not be addressed. No new trial is being ordered that could possibly violate double jeopardy, nor is petitioner being re-sentenced.

To the extent petitioner argues that the Court of Appeal using the Sandoval analysis to find the aggravating factors violates double jeopardy, he has failed to present any case law to support such an assertion. As the court has already stated, this procedure is mandated by the Ninth Circuit.

To the extent petitioner could mistakenly believe that the Court of Appeal opinion that found the trial court's Cunningham error was harmless somehow equals a new sentence or will lead to a new sentence, petitioner is mistaken. Petitioner's fairly lenient sentence has not changed since the original sentence.[5]

As these claims are patently frivolous, they are denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied;

2. A certificate of appealability is issued on the sufficiency of evidence claim.

Dated: 10/25/10

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

ggh:ab  - baug2687.hc

---

[5] Regardless, the Ninth Circuit has held that no Ex Post Facto concerns arise through remanding and re-sentencing a Cunningham violation pursuant to Sandoval. Chioino v. Kernan, 581 F. 3d 1182, 1185-86 (9th Cir. 2009) (citing Butler).